UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY | CIVIL ACTION NO. 09-396 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LOUISIANA PUBLIC SERVICE COMMISSION, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Record Document 12], filed on behalf of the Plaintiff, Union Pacific Railroad Company ("Union Pacific"). Union Pacific seeks a declaration from this Court that, as a matter of law, Act No. 530, enacted as Louisiana Revised Statute 48:394, and Louisiana Public Service Commission General Order No. R-30712 are facially preempted under the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10501, as administered by the U.S. Surface Transportation Board ("STB"). Defendants oppose this motion. For the reasons stated herein, Plaintiff's Motion for Summary Judgment is **DENIED.**

### FACTUAL BACKGROUND

In 2008, the Louisiana Legislature enacted Act No. 530 ("the Act"), as codified at Louisiana Revised Statute 48:394, which requires all railroad companies to obtain permission from the Louisiana Public Service Commission ("LPSC") before closing or removing a private railroad crossing. On April 8, 2009, the LPSC adopted General Order No. R-30712, adopting the Act as written. On May 14, 2009, the LPSC issued General Order R-30712 accordingly, incorporating the language and substance of the Act in its entirety. General Order R-30712 ("the Order") became effective immediately.

The Act requires a railroad company, not less than one hundred eighty days prior to the proposed closing or removal, to provide a written request to the LPSC and to the owner(s) of record of the private crossing stating the reason the railroad company proposes to close the crossing.  La. R.S. § 48:394(A)(1).  The LPSC must publish the written request from the railroad company in the commission's official bulletin for at least twenty-five days.  La. R.S. § 48:394(A)(2).  Thereafter, the LPSC must publish in the official journal of the parish and the commission's official bulletin the date, time, and place of a hearing at which parties in interest can be heard.  La. R.S. § 48:394(B).  The hearing may not be held fewer than sixty days after receipt of the written request by the railroad company to close the private crossing.  Id.  If, after the public hearing, the LPSC determines that "closure or removal of such private crossing is necessary for safety and in the best interest of the public," the LPSC will publish in the official journal for the parish where such crossing is located and in the commission's official bulletin a notice stating the date and manner of closure or removal.  La. R.S. § 48:394(C).  If, however, the LPSC determines that closure is not "necessary for safety" and "in the best interest of the public," the LPSC is authorized under the Act to order the railroad company to keep the private crossing open.

On June 25, 2009, Union Pacific Railroad Company ("Union Pacific") filed this declaratory action against the LPSC and, in their official capacities, Eric Skrmetta, James M. Field, Lambert C. Boissiere, III, Clyde C. Holloway, and Foster L. Campbell (collectively, "the Commissioners").  [Record Document 1].  Union Pacific seeks a declaration that the Act and Order are facially preempted under the Interstate Commerce Commission

Termination Act of 1995, 49 U.S.C. § 10501, and an injunction enjoining the enforcement of the Act and Order.  Id.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552.  If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). Although the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

**LAW AND ANALYSIS**

The Supremacy Clause of the United States Constitution provides Congress with the power to preempt state law in the legitimate exercise of its authority. See U.S. Const. Art. VI, cl. 2 ("the Laws of the United States . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding"); Louisiana Pub. Serv. Com'n v. F.C.C., 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986). Preemption occurs when Congress expresses a clear intent to preempt state regulation, when there is an actual conflict between federal and state law, or when Congress pervasively occupies a field of regulation leaving no room for state regulation. Friberg v. Kansas City Southern Ry. Co., 267 F.3d 439, 442 (5th Cir. 2001) (citing English v. Gen. Elec. Co., 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)); see also, Louisiana Pub. Serv. Com'n, 476 U.S. at 368-69, 106 S.Ct. at 1898 (internal citations omitted). However, in determining the existence and scope of federal preemption, "[t]he purpose of Congress is the ultimate touchstone." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (quoting Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)). Thus, all courts considering the issue of preemption must begin "with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that is the clear and manifest purpose of Congress."[1] Cipollone v. Liggett Group,

---

[1] The presumption against preemption is applicable to all "areas of law traditionally reserved to the states, like police powers and property law," even in cases involving "a private, at-grade railroad crossing." See New Orleans & Gulf Coast Ry. Co. v. Barrois, 533 F.3d 321, 334 (5th Cir. 2008).

Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 2608 (1992) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

The need to regulate railroad operations at the federal level has long been recognized by Congress and the courts. City of Auburn v. United States, 154 F.3d 1025, 1029 (9th Cir. 1998), cert. denied, 527 U.S. 1022, 119 S.Ct. 2367, 144 L.Ed.2d 771 (1999). In fact, the Interstate Commerce Act, as amended, "is among the most pervasive and comprehensive of federal regulatory schemes." Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 318, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981). For more than a century, courts have consistently invalidated attempts by the States to impose on railroad carriers obligations that are plainly inconsistent with the plenary authority of the federal regulatory agencies or with congressional policy. Id.; see also, Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 446, 27 S.Ct. 350, 257, 51 L.Ed. 553 (1907) (Interstate Commerce Commission has exclusive jurisdiction of rate regulation for railroad carriers); Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958) (a city ordinance requiring a license from a municipal authority before a railroad could transfer passengers was facially invalid).

The dispute in this case centers around the two statutory provisions of the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101, *et seq.*, in which the jurisdiction of the Surface Transportation Board ("STB") is defined and the preemptive effect of the ICCTA is declared:[2]

---

[2] The ICCTA, which went into effect on January 1, 1996, was passed by Congress in an effort to reduce the regulation of railroads and other modes of surface transportation. See 49 U.S.C. § 10101 *et seq.* The ICCTA abolished the Interstate Commerce Commission ("ICC") and created the Surface Transportation Board ("STB")

> (b) The jurisdiction of the Board over —
>
>> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>>
>> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).[3]

The Fifth Circuit has adopted the preemption analysis articulated by the STB for determining the existence and scope of preempted state actions and regulations. "First, there are those state actions that are 'categorically preempted' by the ICCTA because such actions 'would directly conflict with exclusive federal regulation of railroads.'" New Orleans & Gulf Coast Ry. Co. v. Barrois, 533 F.3d 321, 332 (5th Cir. 2008) (quoting CSX Transp.,

---

to perform some of the functions previously performed by the ICC. See Friberg v. Kansas City S. Ry. Co., 267 F.3d 439, 442 (5th Cir. 2001).

[3]The ICCTA defines "transportation" to include:

> (A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and
>
> (B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property.

49 U.S.C. § 10501(9).

Inc.–Petition for Declaratory Order, STB Finance Docket No. 34662, 2005 WL 1024490, at *2-3 (S.T.B. May 3, 2005)).  Regulations that are "categorically" or "facially" preempted come in two forms:

> The first is any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized. . .
>
> Second, there can be no state or local regulation of matters directly regulated by the Board—such as the construction, operation, and abandonment of rail lines (see 49 U.S.C. 10901-10907); railroad mergers, line acquisitions, and other forms of consolidation (see 49 U.S.C. 11321-11328); and railroad rates and service (see 49 U.S.C. 10501(b), 10701-10747, 11101-11124).

CSX Transp., Inc., 2005 WL 1024490, at *2 (internal citations and footnote omitted).  For these two categories of state actions, "the preemption analysis is addressed not to the reasonableness of the particular state or local action, but rather to the act of regulation itself."  Id. at *3; Barrois, 533 F.3d at 332 (such regulation is by its very nature "unreasonable interference with interstate commerce").

Second, state actions may be preempted *as applied* based on the degree of interference the particular state action has on railroad operations.  Barrois, 533 F.3d at 332.  "For state and local actions that are not facially preempted, the Section 10501(b) preemption analysis requires a factual assessment of whether that action would have the effect of preventing or unreasonably interfering with railroad transportation."  Id. (quoting CSX Transp., Inc., 2005 WL 1024490, at *3).  "[I]t is well settled that states cannot take an action that would have the effect of foreclosing or unduly restricting a railroad's ability to

conduct any part of its operations or otherwise unreasonably burdening interstate commerce." Id. (quoting CSX Transp., Inc., 2005 WL 1024490, at *4).

Union Pacific argues the Louisiana statutory scheme requiring railroad companies to obtain permission from the LPSC before closing or removing private crossings is categorically preempted by the ICCTA because the Act and Order constitute "a form of preclearance that . . . could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized." [Record Document 12]. The LPSC objects to Union Pacific's characterization of the Act and the Order as the kind of "preclearance" that is categorically preempted under the ICCTA. [Record Document 17]. The LPSC argues the Fifth Circuit has recognized that "[c]rossing disputes, despite the fact that they touch the tracks in some literal sense . . . do not fall into the category of 'categorically' or 'facially preempted' state actions," see Barrois, 533 F.3d at 333, and that the United States Supreme Court has specifically held that the "care of grade crossings is peculiarly within the police power of the states." See Id. (quoting Lehigh Valley R.R. Co. v. Bd. of Pub. Util. Comm'rs, 278 U.S. 24, 35, 49 S.Ct. 69, 73 L.Ed. 161 (1928)).

Recently, an *en banc* Fifth Circuit carefully analyzed the text of Section 10501(b) to determine whether a state possessory action under Louisiana law was preempted by the ICCTA. In Franks Inv. Co. LLC v. Union Pacific RR Co., 593 F.3d 404 (5th Cir. 2010), the railroad carrier closed and removed two private railroad closings which provided access to the plaintiff's property. When the railroad carrier threatened to remove the remaining two private crossings, the plaintiff sought an injunction to prevent the railroad carrier from closing the crossing and to compel it to replace the two crossings that had been removed.

Id., 593 F.3d at 406. Because the plaintiff's possessory action invoked only state property laws, the Fifth Circuit determined the action was not categorically preempted and ultimately decided the case on the basis of "as applied" preemption. Id.

Union Pacific distinguishes this case from Franks on the basis that the Act and Order at issue constitute a preclearance requirement and has the sole purpose of regulating railroad transportation, unlike the generally applicable state possessory laws involved in Franks. See Record Document 33. But Union Pacific's argument, while persuasive, ignores the Fifth Circuit's conclusion that in order for a state action "to be expressly preempted under the ICCTA, it must seek to regulate the *operations of rail transportation.*" Franks, 593 F.3d at 413 (emphasis added).

In Island Park, LLC v. CSX Transp., Inc., 559 F.3d 96 (2d Cir. 2009), the Second Circuit Court of Appeal rejected an expansive definition of "transportation" that would encompass all railroad crossing disputes:

> In our view, the term rail "transportation" does not encompass the closure of this private rail crossing. Rail transportation does include "property . . . related to the movement of passengers or property . . . by rail," 49 U.S.C. § 10102(9)(A), and a rail crossing does constitute "an improvement to railroad tracks that allows vehicles, equipment, and persons to traverse the tracks." But we cannot conclude that *all* state action related to a railroad crossing is pre-empted. The appropriate questions are: what does the state seek to regulate and does the proposed regulation burden rail transportation.

Id., 559 F.3d at 103 (internal citation and footnote omitted). The Second Circuit went on to conclude that the State's order that a private rail crossing be closed and discontinued for safety reasons did not relate to "the movement of passengers or property . . . *by rail*." Id., 559 F.3d at 103-04 (emphasis in original) (quoting 49 U.S.C. § 10102(9)(A)).

Relying on Island Park, the Fifth Circuit likewise rejected the argument that a railroad crossing dispute falls within the definition of transportation:

> The [railroad carrier] distinguishes Island Park on the basis that it involved a state administrative order requiring a railroad to close a crossing for safety reasons. Franks is a private landowner using a state law to keep a railroad crossing open. This distinction is unimportant. Both cases involve state laws that affect railroad crossings. It does not matter whether the impetus behind an attempt to close a crossing comes from the state or the railroad owner. In either case, preventing the railroad owner from making its own decisions regarding railroad crossings creates the same amount of potential interference with railroad operational decisions.

Franks, 593 F.3d at 409-10.

Here, the Act and Order impose a preclearance requirement on railroad carriers before a private rail crossing may be closed. See La. R.S. § 48:394. Nevertheless, this regulation does not have the effect of managing or governing the operations of rail *transportation* and is not expressly preempted under the ICCTA.[4] See Franks, 593 F.3d at 409-13 ("The text of Section 10501(b) . . . establishes that only laws that have the effect of managing or governing rail transportation will be expressly preempted."); Island Park, 559 F.3d at 103-06; see also, Home of Economy v. Burlington Northern Santa Fe R.R., 694 N.W.2d 840, 846 (N.D. 2005) (finding that the ICCTA does not explicitly preempt state law regarding grade crossings and discerning no actual conflict between the STB's exclusive jurisdiction with respect to regulation of rail transportation under the ICCTA and states' traditional authority regarding grade crossings). If the definition of "rail

---

[4] The relevant question under the ICCTA is whether the state legislation has "the effect of managing or governing, and not merely incidentally affecting, rail transportation." Franks, 593 F.3d at 411.

transportation" included the movement of people and property *across* railroad tracks, "then any entity—an automobile, bicycle or even a pedestrian crossing over the crossing—would arguably be beyond the reach of state regulatory authority." Island Park, 559 F.3d at 103.

The typical disputes regarding rail crossings are simply not in the nature of regulation governed by the exclusive jurisdiction of the STB, "despite the fact that they touch the tracks in some literal sense," Barrois, 533 F.3d at 333, and thus do not fall into the category of state actions that are "categorically" or "facially" preempted under the ICCTA.

Ordinarily, the Section 10501(b) preemption analysis requires the Court make a factual inquiry to determine whether the state regulation "would have the effect of preventing or unreasonably interfering with railroad transportation." Id. (quoting CSX Transp., Inc., 2005 WL 1024490, at *3). Union Pacific concedes however, that "[t]his case does not present an 'as applied' preemption analysis which would require this Court to undertake a factual assessment of whether any particular private crossing unreasonably interferes with railroad operations," [Record Document 12-1, p.9], and that, "in deciding this motion for summary judgment, it matters not in the slightest whether any factual showing required by an 'as applied' preemption analysis is made.'" [Record Document 39, p.2]. Consequently, recognizing Union Pacific sought summary judgment only on the basis of "categorical" or "facial" preemption, the Court need not consider at this time whether the state regulation is preempted *as applied.*

## CONCLUSION

For the reasons announced herein, the Court finds, as a matter of law, that Act No. 530, enacted as Louisiana Revised Statute 48:394, and Louisiana Public Service

Commission General Order No. R-30712 are not facially preempted by § 10501 of the ICCTA. Accordingly, Union Pacific's Motion for Summary Judgment [Record Document 12] shall be **DENIED**, and this matter shall be referred to the Magistrate Judge for a scheduling conference.

An Order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 7th day of July, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE