UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY | CIVIL ACTION NO. 09-396 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LOUISIANA PUBLIC SERVICE COMMISSION, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Record Document 65], filed on behalf of the Defendant, the State of Louisiana ("the State"). The State seeks a declaration from this Court that, as a matter of law, Louisiana Revised Statute 48:394, as amended by Act No. 858 of the 2010 Regular Session of the Louisiana Legislature is constitutional. Plaintiff opposes this motion. For the reasons stated herein, Defendant's Motion for Summary Judgment is **GRANTED.**

## FACTUAL BACKGROUND

In 2008, the Louisiana Legislature enacted Act No. 530 ("the Act"), as codified at Louisiana Revised Statute 48:394, which requires all railroad companies to obtain permission from the Louisiana Public Service Commission ("LPSC") before closing or removing a private railroad crossing. The LPSC is mandated by the Louisiana Constitution to:

> regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.

La. Const. Art. IV, §21(B).

On April 8, 2009, the LPSC adopted General Order No. R-30712, adopting the Act as written. On May 14, 2009, the LPSC issued General Order R-30712 accordingly, incorporating the language and substance of the Act in its entirety. General Order R-30712 ("the Order") became effective immediately.

In the summer of 2010, during the pendency of this action, the Louisiana Legislature amended Louisiana Revised Statue 48:394 with Act 858.

The Act, as amended, requires a railroad company, not less than one hundred eighty days prior to the proposed closing or removal, to provide a written request to the LPSC and to the owner(s) of record of the private crossing stating the "manner in which such private railroad crossing unreasonably burdens or substantially interferes with rail transportation". La. R.S. § 48:394(A)(1). The LPSC must publish the written request from the railroad company in the commission's official bulletin for at least twenty-five days. La. R.S. § 48:394(A)(2). Thereafter, the LPSC must publish in the official journal of the parish and the commission's official bulletin the date, time, and place of a hearing at which parties in interest can be heard. La. R.S. § 48:394(B). The hearing may not be held fewer than sixty days after receipt of the written request by the railroad company to close the private crossing. Id. If, after the public hearing, the LPSC determines that "the private railroad crossing unreasonably burdens or substantially interferes with rail transportation," the LPSC will publish in the official journal for the parish where such crossing is located and in the commission's official bulletin a notice stating the date and manner of closure or removal. La. R.S. § 48:394(C). If, however, the LPSC determines that the crossing does not "unreasonably burden or substantially interferes with rail transportation," the LPSC is

authorized under the Act to order the railroad company to keep the private crossing open. Furthermore, the amendments completely eliminate the requirement for preclearance if the "private landowner or landowners and a railroad company enter into a consensual or negotiated written agreement or agreements to close a private railroad crossing." La. R.S. § 48:394(D).

On June 25, 2009, Union Pacific Railroad Company ("Union Pacific") filed this declaratory action against the LPSC and, in their official capacities, Eric Skrmetta, James M. Field, Lambert C. Boissiere, III, Clyde C. Holloway, and Foster L. Campbell (collectively, "the Commissioners"). [Record Document 1]. On July 7, 2010 this Court ruled that as a matter of law, Act No. 530, enacted as La. R.S. § 48:394, and Louisiana Public Service Commission General Order No. R-30712 is not facially preempted by § 10501 of the ICCTA. [Record Document 40 at 11-12]. After the Louisiana Legislature amended La. R.S. § 48:394 with Act 858, Union Pacific filed a Second Amended Complaint which added the State as a defendant and included state and federal constitutional claims. [Record Document 50]. The State responded to the Second Amended Complaint by filing the instant motion for summary judgment seeking a declaration that the contested act is constitutional.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265

(1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). Although the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

## LAW AND ANALYSIS

In Union Pacific's Second Amended Complaint, Union Pacific aruges, "the New Law violates the United States and Louisiana Constitutions in several respects." [Record Document 50 at ¶ 26]. Union Pacific alleges:

> First, the New Law violates Union Pacific's federal and state constitutional right to equal protection. The New Law prohibits railroads operating in Louisiana from protecting their property rights against a trespasser or adverse possessor, when any other landowner would have the absolute right to protect their property interest in any lawful manner. Second, the New Law will effect an unconstitutional taking of Union Pacific's private

> property. The New Law purports to authorize the LPSC to take or damage Union Pacific's private property (and that of the other railroads) solely for the benefit of another private property owner, without regard to any consideration other than whether the crossing unduly burdens or substantially interferes with rail transportation.

[Record Document 50 at ¶ 26].

The Louisiana Supreme Court has set forth the principles for review of constitutionality as follows:

> As a general rule, statutes are presumed to be constitutional; therefore, the party challenging the validity of a statute has the burden of proving its unconstitutionality. Because the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit. As a result, a party challenging the constitutionality of a statute must point to a particular provision of the constitution that would prohibit the enactment of the statute, and must demonstrate clearly and convincingly that it was the constitutional aim of that provision to deny the legislature the power to enact the statute in question. A constitutional limitation on the legislative power may be either express or implied.
>
> Finally, because it is presumed that the legislature acts within its constitutional authority in enacting legislation, this court must construe a statute so as to preserve its constitutionality when it is reasonable to do so. In other words, if a statute is susceptible of two constructions, one of which would render it unconstitutional, or raise grave constitutional questions, the court will adopt the interpretation of the statute which, without doing violence to its language, will maintain its constitutionality. Nevertheless, the constitution is the supreme law of this state, to which all legislative acts must yield. When a statute conflicts with a constitutional provision, the statute must fall. (Citations omitted).

City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund, 986 So.2d 1, 12-13 (La. 2007).

## I. VOID FOR VAGUENESS

"Vagueness is a doctrine rooted in the due process guarantees of Article I, § 2 of the Louisiana Constitution and the Fourteenth Amendment of the United States Constitution." City of Baton Rouge v. Ross, 654 So.2d 1311, 1338-39 (La. 1995).

A panel of the Fifth Circuit adopted the following approach when dealing with void for vagueness in civil contexts:

> A statute is unconstitutionally vague if it does not give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited." United States v. Bird, 124 F.3d 667, 683 (5th Cir.1997) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). The void-for-vagueness doctrine has been primarily employed to strike down criminal laws. See Okpalobi v. Foster, 190 F.3d 337, 358 n. 10 (5th Cir.1999). In the civil context, "the statute must be 'so vague and indefinite as really to be no rule at all.'" Seniors Civil Liberties Ass'n v. Kemp, 965 F.2d 1030, 1036 (11th Cir.1992) (quoting Boutilier v. INS, 387 U.S. 118, 123, 87 S.Ct. 1563, 18 L.Ed.2d 661 (1967)).

Groome Resources Ltd., L.L.C. v. Parish of Jefferson, 234 F.3d 192, 217 (5th Cir. 2000).

Union Pacific contends that:

> i. The Amended Act empowers the LPSC to Impose Burdens and Declare Forfeiture of Rights of Railroads without any standards
> . . .
> ii. The Amended Act Provides No Protection against Arbitrary or Discriminatory Actions by LPSC.

[Record Document 69 at 6, 9].

In regards to standards, Union Pacific's argument must fail. In an attempt for the State to comply with the Fifth Circuit's new standard for preemption, adopted in Franks

Investment Co., L.L.C. v. Union Pacfic R.R. Co., the State amended La. R.S. § 48:394 to adopt that very language. 593 F.3d 404 (5th Cir. 2010). A railroad will be allowed to close a private railroad crossing if, after a hearing, the LPSC finds that it unreasonably burdens or substantially interferes with rail transport. Given that the Fifth Circuit adopted this very language from the federal Surface Transportation Board ("STB"), it seems that Union Pacific's argument must fail. As far as the possible arbitrary or discriminatory action by the LPSC is concerned, this Court disagrees. The Louisiana Constitution grants parties aggrieved by the LPSC the right to appeal any decision of the LPSC to a district court.[1] The amendments to La. R.S. § 48:394 do nothing to change this guarantee. Therefore, this argument too must fail. Using the civil standard as "so vague and indefinite as really to be no rule at all" this Court disagrees with Union Pacific's interpretation of La. R.S. § 48:394. The State of Louisiana is entitled to summary judgment on this point.

**II.   UNCONSTITUTIONAL TAKING**

Next Union Pacific alleges that La. R.S. § 48:394 "authorizes an unconstitutional taking." [Record Document 69 at 17]. Union Pacific in their opposition confines their argument to the Louisiana Constitution. This Court will likewise confine its analysis to the Louisiana Constitution. The Louisiana Constitution states:

> Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.

---

[1] "(E) Appeals. Appeal may be taken in the manner provided by law by any aggrieved party or intervenor to the district court of the domicile of the commission. A right of direct appeal from any judgment of the district court shall be allowed to the supreme court. These rights of appeal shall extend to any action by the commission, including but not limited to action taken by the commission or by a public utility under the provisions of Subparagraph (3) of Paragraph (D) of this Section." La. Const. art. IV, §21(E)

> Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity.

La. Const. art. I, § 4(B)(1)

According to the Louisiana Supreme Court:

> Because the taking and damaging of legal property rights, as opposed to the concrete objects of rights, is by nature abstract and conceptual and often incompletely understood, there is an uncommon need for a firm framework of analysis. Accordingly, we have decided to adopt a three-pronged analysis, similar to that recommended by Professor Stoebuck, in determining whether a claimant is entitled to eminent domain compensation. (citations omitted). Under this analysis, we must first determine if a person's legal right with respect to a thing or an object has been affected. In other words, we must be able to identify a recognized species of private property right that has been affected, regardless of whether causes of action may exist on other theories; otherwise, it cannot be said there has been an exercise of the power of eminent domain. Second, if it is determined that property is involved, we must decide whether the property, either a right or a thing, has been taken or damaged, in a constitutional sense. If property is taken or damaged, one may say that there has been an attempted exercise of the eminent domain power. The final question then is whether the taking or damaging is for a public purpose under Article I, § 4.

State, Through Dept. of Transp. and Development v. Chambers Inv. Co., Inc., 595 So.2d 598, 603 (La. 1992).

This Court has reviewed the statute in question and it finds that there is no taking of property. All that is required of a railroad is that they do not close a private railroad crossing. The State is not "taking" the railroad's property. As such, the State is entitled to summary judgment on this ground.

### III.  EQUAL PROTECTION

In order for Union Pacific to assert that the LPSC has violated the Equal Protection Clause of the U.S. Constitution or Louisiana Constitution, Union Pacific must prove that the LPSC has treated Union Pacific differently than other similarly situated entities. <u>See City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ("The Equal Protection Clause of the Fourteenth Amendment ... is essentially a direction that all persons similarly situated should be treated alike."); <u>City of New Orleans v. La. Assessors' Ret. & Relief Fund</u>, 986 So.2d 1, 26 (La.2007) ("Generally, the state constitutional guarantee of equal protection mandates that state laws affect alike all persons and interests similarly situated.").

Union Pacific argues that it is being treated differently from other property owners. However, this Court concludes that comparing Union Pacific to all property owners is overly broad.  Other property owners in the state are not similarly situated to Union Pacific.  In this Court's review of the national jurisprudence, railroads are already differentiated from other common carriers:

> In other words there must be a reasonable basis to justify legislation which applies to railroad companies and not to motor carriers of freight and passengers travelling over public highways.
> It is our opinion that a reasonable basis for such distinction exists. Motor carriers and railroads are engaged in the same general business, yet the methods and means by which they perform their functions are far different and the legislature is acting within its prerogative to separate them into classes for regulation. Railroads are quasi-public corporations. In their origin, many received land grants and other aids in construction. They are given the power of eminent domain. They own the right-of-way over which they operate and the

> tracks on which their trains run. Their lines in many instances traverse fields at angles and divide fields and pastures. They have the right to construct spur tracks and condemn private property for such purpose to aid their business. Motor carriers too are subject to many regulations not required of railroads and a large segment of our statutory and administrative law applies to them as a separate class. For the most part they operate on public highways. They are limited in size and weight. They are required to carry various types of insurance as a protection for their customers. Seasonally, their weight loads are drastically limited and in some instances, their normal routes are changed and they are denied the use of certain highways. They must obtain permits to operate and the area of their operation is restricted. Such permits are subject to cancellation for non-compliance with statutory and administrative regulations. They may be limited as to commodities they can transport. Laws restrict their speeds and impose other safety restrictions. They are required to pay special compensation taxes for use of public highways. Others could be mentioned. These regulations are not imposed on these carriers because of the same general business in which they are engaged but because of the means and methods by which they perform such business. State legislatures and the federal congress have long recognized railroads as a class by enacting special laws protecting their employees. As to such employees, defenses of contributory negligence, assumption of risk, fellow-servant rule, and others, have been limited or abolished. Railroads are required to maintain flagmen, crossing signals, and many other safety devices.

Berens v. Chicago, M. St. P. & P. R. Co., 120 N.W.2d 565, 571 (S.D. 1963). As this motion is plead, this Court finds that Union Pacific is not being treated differently from other similarly situated common carriers, i.e., railroads. The United State Supreme Court has even held that railroads can be singled out and treated differently for tax purposes. In rejecting an attack upon a state classification of utility and non-utility properties, the Louisiana Supreme Court reiterated in Louisiana & Arkansas Ry.Co. v. Goslin:

> That the states may classify property for taxation; may set up

> different modes of assessment, valuation and collection; may tax some kinds of property at higher rates than others; and in making all these differentiations may treat railroads and other utilities with that separateness which their distinctive characteristics and functions in society make appropriate-these are among the commonplaces of taxation and of constitutional law. (Citations omitted.) . . . (So) far as the Federal Constitution is concerned, a state can put railroad property into one pigeonhole and other property into another . . . .

300 So.2d 483, 487 (La. 1974)(quoting Nashville, C. & St. L. Ry. v. Browning, 310 U.S. 362, 368-369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1949)).

This Court finds no violation of federal or state equal protection guarantees. The State is entitled to summary judgment on this issue.

## IV.    LOUISIANA PROPERTY LAW

According to Union Pacific, "[t]he Act and the Amended Act, however, seek to establish the LPSC as the judicial arbiter of disputes between private landowners **without regard to** the rules and laws applicable to immovable property set forth in the Civil Code (namely ownership, title, establishment of servitudes, or possession of immovable property." [Record Document 69 at 26]. This Court has not been presented with jurisprudence evidencing the interpretation suggested by Plaintiff. This Court will not adopt the unsupported interpretation advanced by the Plaintiff. However, this argument is necessarily intertwined with Union Pacific's next argument pertaining to separation of powers.

## V.     SEPARATION OF POWERS–ORIGINAL JURISDICTION OF COURTS

Union Pacific argues "[t]he resolution of disputes between private property owners is a function of the judicial branch of government and not that of the Public Service

Commission." [Record Document 69 at 26]. Further, Union Pacific argues "[i]f the LPSC decides a particular crossing does not interfere with rail transportation there is no property law or right that can save the railroad from the LPSC deciding that the railroad must accept a forced right of passage on its property." [Record Document 69 at 27].

The Louisiana Constitution states:

> Section 16. (A) Original Jurisdiction. (1) Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters, a district court shall have original jurisdiction of all civil and criminal matters. (2) It shall have exclusive original jurisdiction of felony cases and of cases involving title to immovable property, except as provided in . . .

La. Const. art. V, § 16. The Louisiana Supreme Court defined original jurisdiction as "'[j]urisdiction in the first instance' or [j]urisdiction to take cognizance of a cause at its inception, try it, and pass judgment upon the law and facts'." Pope v. State, 99-2559 (La.6/29/01), 792 So.2d 713, 718.

In Louisiana, the paradigm case for an analysis of the violation of separation of powers through a divestiture of original jurisdiction is Pope v. State. In that case, the Louisiana Supreme Court was asked to rule on the constitutionality of a statute that created an administrative mechanism to resolve prisoner tort claims before they proceeded to a district court. Pope, 792 So.2d at 715-17. According to the court, "the problem is that the statutes divest the district courts of the *original* jurisdiction granted by the Constitution in all civil matters and vest *original* jurisdiction in certain tort actions in the DOC officials who administer the administrative remedy procedure." Id. at 718. The court was concerned because the administrative procedure required a prisoner to exhaust all

administrative remedies before they could ask a district court to review the initial complaint. Id. at 716. Perhaps most importantly, the court stated:

> We conclude that the Legislature cannot, by legislative act, divest the district courts of the original jurisdiction fixed by the Constitution in those civil matters, such as tort actions, in which the Constitution does not otherwise provide for original jurisdiction in other tribunals. The Legislature, of course, is free to enact procedures for initial submission of tort claims by prison inmates to an administrative agency for review, for example, of frivolous claims, as long as the action of the administrative agency does not constitute the exercise of original jurisdiction.

Id. at 720.

Using that paradigm to evaluate, La. R.S. § 48:394, this Court finds there is no violation of separation of powers through divestiture of original jurisdiction from district courts. Union Pacific strenuously argues that the private railroad crossings implicate title to immovable property. If the Act in question, did empower the LPSC to make a determination about who owned the property in question, then absolutely the original jurisdiction of the district courts would be infringed upon and the Act would be unconstitutional. However, this is not the case in the instant action. The Act does not empower the LPSC to make any determinations about title to immovable property.

This Court finds that Union Pacific's arguments are unpersuasive. There is no violation of separation of powers such as stripping district courts of original jurisdiction. La. R.S. § 48:394 merely allows the LPSC to determine if allowing the private railroad crossing to remain open would unreasonably burden or substantially interfere with rail transportation. The LPSC, despite Union Pacific's arguments, is not making any decisions about the title to immovable property. In this Court's eyes, the LPSC is not usurping any

power of the courts of original jurisdiction.

Summary Judgment is appropriate on this issue because there is no genuine issue of material fact.

## CONCLUSION

For the reasons announced herein, the Court finds, as a matter of law, Louisiana Revised Statute 48:394, as amended by Act No. 858 is constitutional,

Accordingly,

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment [Record Document 65] be and is hereby **GRANTED**, and that Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

A Judgment consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 18th day of November, 2010.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE